**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Albert Kuperman

    v.                                    Civil No. 06-cv-420-JD

New Hampshire Department
of Corrections, et al.


**REPORT AND RECOMMENDATION**

Albert Kuperman has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants abridged his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution and New Hampshire law (document no. 1). He further alleges that defendants abridged his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA")[1] and Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq.

Named as defendants are the New Hampshire Department of

---

[1] The complaint alleges violations of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb-2000bb-4 ("RFRA"). In City of Boerne v. Flores, 521 U.S. 507, 532-36 (1997), the Supreme Court declared RFRA unconstitutional as it applied to the states and their subdivisions. See also Cutter v. Wilkinson, 544 U.S. 709, 715 at n.2 (2005). Accordingly, I liberally construe the complaint to allege violations under RLUIPA, which is the successor statute to RFRA and which applies to the states. See Cutter v. Wilkinson, 423 F.3d 579, 582 (6th Cir. 2005).

Corrections ("NHDOC") and numerous employees of the NHDOC, the
New Hampshire State Prison ("NHSP") and the Northern New
Hampshire Correctional Facility ("NCF").[2]   The complaint is
before me for preliminary review to determine whether, among
other things, it states a claim upon which relief may be granted.
See 28 U.S.C. § 1915A; U.S. District Court for the District of
New Hampshire Local Rule ("LR") 4.3(d)(2).

For the reasons stated below, I find that Kuperman has
alleged the following claims against Cattell and Blaisdell in
their representative capacities: (1) an Eighth Amendment claim
based on the denial of adequate medical care and a related state
law negligence claim; (2) an Eighth Amendment claim based on the
failure to protect; (3) a First Amendment claim based on the
denial of free exercise of religion; and (4) a RLUIPA claim based

---

[2]The NHDOC defendants include: Stephen J. Curry, former
Commissioner; William Wrenn, Commisssioner; and Robert MacLeod,
Administrative Chief, Forensic and Medical Services Division.

The NHSP and NCF defendants include: Bruce Cattell, NHSP
Warden; Greg Crompton, NHSP Deputy Warden; Larry Blaisdell, NCF
Acting Warden; Bernie Campbell, Physical Therapist; doctors
Ippolito and Englander; James Daly, Chaplin; employees Kimberly
Lacasse, Joy Leeks, Judy Baker and Barbara Mooney; and
correctional officers Danielle Charter and Washburn.

on the substantial burden on religious practices.[3]  I recommend dismissal of all remaining claims.

<u>Background</u>

Kuperman is currently incarcerated at the NHSP.  The record is unclear as to his dates of confinement at the NHSP and the NCF.  Without identifying a particular facility, he alleges that during the course of his incarceration[4] prison officials subjected him to various constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution, RLUIPA and New Hampshire law. Acting in their capacity as state employees, defendants allegedly denied Kuperman adequate medical care, failed to protect him from attack by other inmates, denied him free exercise of religion and imposed a substantial burden on his religious practices.  He further alleges that defendants failed to accommodate his disability under Title II of the ADA.  He now brings this action, alleging that defendants' acts and omissions rise to the level of violations under federal and state law.

---

[3]Given that Kuperman is represented by counsel, this Court assumes that administrative remedies have been exhausted.

[4]Throughout the complaint, Kuperman refers to the NCF and NHSP collectively as "the prison".

Discussion

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Kuperman's Section 1983 action is that prison officials subjected him to the following constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

A.   Eighth Amendment Claims

1.   Denial of Adequate Medical Care

Kuperman alleges that defendants violated his Eighth Amendment rights by withholding essential medical care.

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions

4

sufficiently harmful to evidence deliberate indifference to
serious medical needs." See Estelle, 429 U.S. at 97.  In order
to be found deliberately indifferent, a prison official "must
both be aware of facts from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also
draw the inference." Id.   See Farmer v. Brennan, 511 U.S. 825,
837 (1994).  Deliberate indifference may be manifested by prison
doctors in their response to the prisoner's needs or by prison
personnel "intentionally denying or delaying access to medical
care or intentionally interfering with the treatment once
prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  "A
'serious medical need' is one 'that has been diagnosed by a
physician as mandating treatment, or one that is so obvious that
even a lay person would easily recognize the necessity for a
doctor's attention.'"   See Mahan v. Plymouth County House of
Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault
v. Salem, 923 F.2d 203, 208 (1st Cir. 1990)).

     Here, the complaint alleges sufficient facts to state an
Eighth Amendment claim for the denial of adequate medical care.
First, Kuperman has described a serious medical need.  He
allegedly suffers from a congenital heart and circulatory

5

condition described as "total anomalous pulmonary venous return to the coronary sinus." This condition required him to undergo surgery at two years of age. In December 2003, Kuperman allegedly experienced atrial fibrillation, which required him to undergo a cardioversion at the Dartmouth Hitchcock Medical Center ("DHMC"). Electrocardiograms and other tests allegedly indicate that he continues to suffer from atrial flutter.

Second, Kuperman has demonstrated deliberate indifference with respect to defendants by alleging that once they were notified of his serious medical needs, they nevertheless denied him proper care. Upon his discharge from the DHMC in December 2003, Kuperman was instructed to schedule a follow-up appointment with a cardiac specialist at DHMC within one month. The prison allegedly failed to schedule the appointment. While Kuperman has not provided any supporting medical records, he claims that Mooney, a nurse on staff at the prison, wrote, "Please make an appointment to see Dr. Freedman or Dr. Englander to evaluate whether consult warranted." Prison medical staff waited until July 21, 2004 to order the cardiac consult. Kuperman allegedly was not seen in the cardiology clinic at DHMC until September 2, 2004, eight months after his physician ordered him to be

evaluated by a cardiac specialist.

Kuperman further alleges that defendants failed to monitor his cholesterol levels and provide him with an appropriate diet, thereby increasing his risk for cardiac problems.  Despite Kuperman's continuing atrial flutter, defendants have failed to provide him with regular diagnostic tests, such as, electrocardiograms, echocardiograms and blood tests.  In addition, defendants have denied Kuperman's repeated requests to be evaluated by his cardiologists at the DHMC.  On May 15, 2006, the DHMC contacted the prison to schedule a cardiology appointment for Kuperman, however, the prison allegedly refused to schedule the appointment.  If true, the allegations demonstrate that defendants' actions and omissions prevented Kuperman from receiving prompt and essential medical treatment for a serious condition.  Accordingly, I find that he has stated an Eighth Amendment claim, premised on the denial of adequate medical care, against Cattell and Blaisdell in their representative capacities.[5]  Because the complaint wholly fails

---

[5]Because Kuperman fails to relate the claims to a particular defendant and refers to the NCF and NHSP collectively as "the prison," I liberally construe the claims to be brought against Cattell, in his representative capacity as Warden of the NHSP, and Blaisdell in his representative capacity as Acting Warden of the NCF.

to provide any factual predicate in support of an Eighth
Amendment claim against the remaining defendants, I recommend
dismissal of the claims against them.

        2.   Failure to Protect

    Kuperman alleges that defendants further abridged his Eighth
Amendment rights by failing to protect him from a series of
sexual assaults by other inmates.

    Prison officials have an obligation to protect prisoners
from violence at the hands of other prisoners.  See Farmer, 511
U.S. at 833 (citation omitted).  "It is not, however, every
injury suffered by one prisoner at the hands of another that
translates into constitutional liability for prison officials
responsible for the victim's safety."  Id.  "Rather, liability
attaches only when two requirements are met".  Espaillat v.
Mousseau, Civ. No. 03-338-SM, 2004 WL 2915287, slip op. at *2
(D.N.H. Dec. 16, 2004).  First, the alleged deprivation must be
objectively serious, that is, showing that the inmate is
incarcerated under conditions posing a substantial risk of
serious harm.  See Burrell v. Hampshire County, 307 F.3d 1, 7-8
(2002) (citation omitted).  Second, the official involved must
have had a sufficiently culpable state of mind, described as
"deliberate indifference" to inmate health or safety.  Id.  "[A]

prison official 'cannot be found liable . . . for denying an
inmate humane conditions of confinement unless the official knows
of and disregards an excessive risk to inmate health or safety;
the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists,
and he must also draw the inference.'"  <u>Espaillat</u>, Civ. No. 03-
338-SM, 2004 WL 2915287, slip op. at *2 (citing <u>Farmer</u>, 511 U.S.
at 837).

Here, Kuperman alleges that he was sexually assaulted on at
least four occasions, all of which are documented in prison
records.  On January 10, 2004 and on June 29, 2004 through July
8, 2004, he allegedly was continually raped while in the secure
housing unit.  On October 8, 2004, another inmate allegedly
"grabbed his testicles, squeezed them and forced him to
ejaculate."  On February 14, 2005, he suffered additional sexual
assaults lasting two days in duration.  Although Kuperman
reported the assaults, prison officials failed "to properly
classify and house" him and protect him from repeated assaults
and the risk of serious harm.  If true, these allegations may
state a cognizable Eighth Amendment claim premised on the failure
to protect against Cattell and Blaisdell in their representative
capacities.

B.   First Amendment Claim

Kuperman alleges that defendants violated his rights under the First Amendment's Free Exercise Clause,[6] as applied to the states through the Fourteenth Amendment, by denying him a kosher diet.

It is well-established that convicted prisoners do not forfeit all constitutional protections by reason of their incarceration.  See Bell v. Wolfish, 441 U.S. 520, 545 (1979). "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," Pell v. Procunier, 417 U.S. 817, 822 (1974), including the right to free exercise of religion, see O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Cruz v. Beto, 405 U.S. 319, 322 (1972)); accord Moorish Science Temple, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) ("[A] prisoner retains those First Amendment guarantees, including the right to participate in practices which are an integral part of his religious faith . . ..").  Prisons must

_____

[6]The relevant provision of the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. Amend. I (hereinafter "Free Exercise Clause").

provide all inmates reasonable opportunities to exercise their religious freedom.  See Cruz, 405 U.S. at 322 n.2.

Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (quoting O'Lone, 482 U.S. at 349).  See also Shaw v. Murphy, 532 U.S. 223, 227–229 (2001).  The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield if contrary to prison regulations that are "reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, 89 (1987); see also, Washington v. Harper, 494 U.S. 210, 224 (1990) (prison restrictions that implicate constitutional rights are judged by the reasonableness standard); O'Lone, 482 U.S. at 351–352 (the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise).

Here, Kuperman alleges that during his incarceration, defendants denied him a kosher diet consistent with his religion. Kuperman is a member of the Jewish Orthodox religion and claims that a kosher diet is required by his faith.  Although the prison

11

has provided him with certain kosher meals, he contends that meals are not well balanced and do not satisfy his dietary requirements.  He further alleges that he repeatedly informed defendants of his need for a kosher diet and the insufficiency of the meals provided but that they failed to meet his needs. Despite Kuperman's repeated requests, defendants have denied him a kosher diet, thereby interfering with his free exercise of religion.  If true, these allegations may state a cognizable claim under the First Amendment's Free Exercise Clause against Cattell and Blaisdell in their representative capacities. Because Kuperman has failed to allege sufficient predicate facts against the remaining defendants, I recommend that the claims against them be dismissed.

II.  <u>RLUIPA Claim</u>

I liberally construe the complaint to allege that defendants' actions have burdened Kuperman's religious practice under RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion.  <u>See</u> <u>Mayweathers v. Newland</u>, 314 F.3d 1062, 1065 (9th Cir. 2002).

Under RLUIPA, governmental imposition of "substantial burden on the religious exercise" of a prisoner is prohibited, unless the burden "(1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The phrase "religious exercise" is to be construed liberally to include belief and profession as well as the performance of physical acts such as assembling with others to worship or participating in sacramental use of bread and wine. See Cutter, 544 U.S. at 720. RLUIPA applies to both substantial burdens imposed by programs or activities that receive federal financial assistance and to substantial burdens on religious exercise having an effect on interstate commerce. Id at 715-16; 42 U.S.C. § 2000cc-1(b).

Construed liberally, the complaint alleges that defendants have substantially burdened Kuperman's religious beliefs by denying him a kosher diet and preventing him from observing his faith. If true, these allegations may state a cognizable RLUIPA claim against Cattell and Blaisdell in their representative capacities. Because Kuperman has failed to allege sufficient predicate facts against the remaining defendants, I recommend that the RLUIPA claim against them be dismissed.

III. ADA Claim

Construed liberally, the complaint alleges that defendants failed to accommodate Kuperman's disability and/or provide him

13

with reasonable modifications in violation of Title II of the
ADA.

Title II of the ADA prohibits discrimination on the basis of
disability.  See Buchanan v. Maine, 469 F.3d 158, 170–71 (1st
Cir. 2006).  Title II provides that "no qualified individual with
a disability shall, by reason of such disability, be excluded
from participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to
discrimination by any such entity."  42 U.S.C. § 12132.  A
"'qualified individual with a disability' is defined as 'an
individual with a disability who, with or without reasonable
modifications to rules, policies, or practices, the removal of
architectural, communication, or transportation barriers, or the
provision of auxiliary aids and services, meets the essential
requirements for the receipt of services of the participation in
programs or activities provided by a public entity.'" United
States v. Georgia, 546 U.S. 151, 126 S. Ct. 877, 879 (2006)
(quoting 42 U.S.C. § 12131(1)).  A "public entity" is defined as
"any State or local government" and "any department, agency, . .
. or other instrumentality of a State, § 12131(1)." Id.  This
term includes state prisons.  Id. (citing Pennsylvania Dep't of
Corrections v. Yeskey, 524 U.S. 206, 10 (1998)(holding that

14

"prisons provide inmates with many recreational 'activities,'
medical 'services,' and educational and vocational 'programs,'
all of which at least theoretically 'benefit' the prisoners (and
any of which disabled prisoners could be 'excluded from
participation in.'")).

The First Circuit has held that a plaintiff seeking relief
under Title II must establish:

> (1) that he is a qualified individual with a
> disability; (2) that he was either excluded from
> participation in or denied the benefits of some public
> entity's services, programs, or activities or was
> otherwise discriminated against; and (3) that such
> exclusion, denial of benefits, or discrimination was by
> reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Here, Kuperman alleges that because of his heart and
circulatory condition and an undisclosed back condition, he is
required to sleep on an egg crate mattress.  Although the prison
provided him with a pass for an egg crate mattress, Campbell
allegedly withdrew the pass.  According to Kuperman, Campbell's
actions violate his right to receive reasonable accommodations
and modifications for his disability.  Kuperman also alleges that
his cardiac condition requires a dietician to monitor his diet.
Defendants allegedly failed to monitor his diet, thereby further
denying him reasonable accommodations and modifications for his

15

disability.

Accepting Kuperman's allegations as true and assuming he is a qualified individual with a disability, I conclude that he has failed to allege sufficient facts to state a claim under the ADA. The basis of his claim is that defendants denied him a mattress and proper monitoring of his diet, as required by his medical conditions.  He therefore essentially alleges that he is not receiving adequate or proper medical care.  "[A]n inmate's medical treatment, or lack of treatment, does not provide a basis upon which to impose liability under the ADA . . . "  Egan v. Virginia Dep't of Corrections, No. CIV A 7:06CV00338, 2006 WL 2222674 at *2 (W.D. Va. Aug. 2, 2006)(citing Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005)).  Because Kuperman does not allege that the lack of proper medical treatment stems from any discriminatory intent related to a disability, I conclude that he has failed to alleged sufficient facts to state a cognizable claim under the ADA.  Accordingly, I recommend dismissal of this claim in its entirety.

IV.  <u>State Law Claims</u>

Kuperman alleges that the same conduct that violated his Eighth Amendment right to adequate medical care amounted to medical negligence under New Hampshire law.  The negligence claim

16

relates to Kuperman's heart and circulatory condition and is so related that it forms part of the "same case or controversy" of the Eighth Amendment denial of adequate medical care claim.  See 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction over claims that are so related they form part of the same case or controversy).  Accordingly, I conclude that this Court may exercise supplemental jurisdiction over the medical negligence claim.

V.   Official Capacity

Construed liberally, the complaint seeks injunctive and monetary relief for wrongs committed by Cattell and Blaisdell as state actors in their official capacities.  It is well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).

17

Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  To the extent Kuperman brings official capacity claims for monetary relief against the state defendants, who are officials of the NHSP and NCF, I recommend that those claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  <u>See</u> <u>Will</u>, 491 U.S. at 71 n.10.  Thus, Kuperman is not barred from bringing claims for prospective injunctive relief against the defendants in their official capacities.

<u>Conclusion</u>

For the reasons stated above, I find that Kuperman has stated the following claims against Cattell and Blaisdell in their representative capacities: (1) an Eighth Amendment claim based on the denial of adequate medical care and a related state law negligence claim; (2) an Eighth Amendment claim based on the failure to protect; (3) a First Amendment claim based on the denial of free exercise of religion; and (4) a RLUIPA claim based on the substantial burden on religious practices.  I recommend dismissal of all remaining claims.

18

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: February 13, 2007

cc:  Nancy Sue Tierney, Esq.