UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Albert Kuperman

     v.                        Civil No. 06-cv-420-JL
                                    Opinion No. 2009 DNH 175
Warden, New Hampshire State
Prison, and Acting Warden,
Northern New Hampshire
Correctional Facility

## OPINION AND ORDER

In this case, an inmate challenges a prison policy that allowed his religious diet to be suspended for six months because of a single dietary violation.  Plaintiff Albert Kuperman, currently an inmate at the New Hampshire State Prison, has sued the wardens of that facility and the Northern New Hampshire Correctional Facility in their official capacities, alleging that the policy violated his rights to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc et seq. ("RLUIPA").  This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, arguing that recent changes to the prison policy on religious diets have mooted Kuperman's challenge, which seeks only prospective injunctive

relief.[1]  After hearing oral argument, this court grants the
motion.  The prison's policy changes, while not necessarily
sufficient to satisfy the First Amendment and RLUIPA, have
removed any real and immediate prospect of harm to Kuperman and
thus have mooted his claims.  Moreover, Kuperman is collaterally
estopped from bringing those claims by his prior, unsuccessful
attempt to litigate the same issue in state court.


## I.  Applicable legal standard

Summary judgment is appropriate where the pleadings, along
with any affidavits on file, show that there is "no genuine issue
as to any material fact and that the movant is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue
is "genuine" if it may reasonably be resolved in either party's
favor at trial, and "material" if it has the capacity to sway the
outcome under applicable law.  Vineberg v. Bissonnette, 548 F.3d
50, 56 (1st Cir. 2008) (quotations omitted).  In making this

---

[1]Kuperman initially sought both injunctive and monetary
relief.  Because he brought his claims against state actors in
their official capacities, however, this court determined that
money damages were barred by the Eleventh Amendment, leaving only
his request for prospective injunctive relief.  See document nos.
6 and 8.  Kuperman later sought clarification of that ruling, and
this court confirmed that "plaintiff may not recover money
damages in this case."  See document no. 53 and associated margin
order dated March 17, 2009.

determination, the court must "scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  The following statement of facts conforms to those requirements.

## II.  **Background**

Kuperman has been incarcerated in the New Hampshire prison system since April 2004, initially at the Northern New Hampshire Correctional Facility and then at the New Hampshire State Prison (collectively, the "prison").  Upon arrival, Kuperman requested and was granted a kosher diet, based on his professed belief in and practice of orthodox Judaism.  At the time, the prison's Policy and Procedure Directive ("PPD") 7.17[2] required an automatic six-month suspension of an inmate's religious diet if the inmate either consumed or possessed food in violation of the diet.

Kuperman purchased non-kosher food from the prison canteen in September 2004, and the prison automatically suspended his kosher meal privileges under PPD 7.17.  Kuperman, claiming he made the purchase on behalf of another inmate, brought suit

---

[2]PPD 7.17 was issued pursuant to N.H. Rev. Stat. §§ 622:22-23 and N.H. Code R. Cor. 302.07.

3

against the prison in state court.  The court dismissed his case on the merits, concluding that PPD 7.17 "provides an opportunity for the petitioner to exercise his constitutionally guaranteed rights of religious belief."  Kuperman v. Lurry, No. 04-E-119, at 4 (N.H. Super. Ct. Dec. 20, 2004) (Vaughan, P.J.).

The prison suspended Kuperman's kosher meal privileges again in May 2005 after prison staff observed him eating non-kosher chicken in the chow hall.  Kuperman again brought suit against the prison, this time in federal court, alleging both First Amendment and RLUIPA violations.  The court denied preliminary injunctive relief, concluding that Kuperman was unlikely to succeed on the merits.  It then dismissed his case without prejudice for failure to exhaust his administrative remedies. Kuperman v. Comm'r, N.H. Dep't of Corr., No. 05-cv-00185-PB, 2005 WL 1657082 (D.N.H. June 24, 2005) (Barbadoro, J.), aff'd, No. 05-2348 (1st Cir. Nov. 6, 2006).

In July 2006, the prison modified PPD 7.17 so that an inmate's violation of his religious diet would result in a six-month suspension only if the inmate acted knowingly and intentionally.  The sanction was no longer automatic.  Shortly after this revision, in October 2006, prison staff again observed Kuperman eating non-kosher chicken in the chow hall.  For a third time, the prison suspended his kosher meal privileges.  Kuperman

4

responded by filing this lawsuit, alleging First Amendment and RLUIPA violations.[3]

This court granted a preliminary injunction to Kuperman in April 2007, as recommended by Judge Muirhead after an evidentiary hearing.  See Kuperman v. N.H. Dep't of Corr., 2007 DNH 059, 14 (Muirhead, M.J.) (finding "that this particular prison regulation ... is not constitutional when applied in such a way as to suspend an inmate with sincerely held religious beliefs from his religious diet for limited incidents of violations of the diet"). The injunction ordered the defendants to restore Kuperman's kosher meal privileges immediately and to refrain from suspending them in the future based on isolated dietary violations.  Id. Kuperman has been on a kosher diet since that time, notwithstanding one additional instance of alleged kosher food consumption in the chow hall.

_____

[3]Kuperman also brought a number of other claims against the defendants:  an Eighth Amendment claim for failure to protect him from a series of sexual assaults; another Eighth Amendment claim for failure to provide adequate medical care; a related common-law negligence claim; and a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12312 et seq.  This court dismissed the ADA claim as legally insufficient.  See document nos. 6 and 8.  Kuperman then voluntarily dismissed the federal and state medical-care claims. See document nos. 37 and 45.  At oral argument on this summary judgment motion, Kuperman's counsel informed the court that Kuperman also voluntarily dismissed his failure-to-protect claim (which had been briefed by both parties).

The prison has since modified PPD 7.17 in a number of additional respects, making it more favorable to inmates. The policy now provides that an inmate's first three violations of his religious diet will result in counseling with the prison chaplain, not a suspension of the diet. After a fourth violation within a two-year period, the inmate's diet may be withdrawn by the prison warden at the recommendation of the chaplain, but only after the inmate receives fifteen days' notice and an opportunity to defend himself in writing. If unsuccessful, the inmate may file an appeal with the Commissioner (though doing so will not stay the dietary withdrawal). In addition, the inmate may apply for reinstatement of his religious diet. The policy prohibits immediate reinstatement, but no longer imposes a set period of suspension, stating only that the reinstatement process "ordinarily may extend up to thirty days."

## III.  <u>Analysis</u>

Kuperman alleges that the defendants, by suspending his kosher meal privileges for a single dietary departure, violated his rights to free exercise of religion under both the First Amendment and RLUIPA. As explained below, because Kuperman is limited to seeking prospective injunctive relief, <u>see</u> <u>supra</u> n.1, both of his claims have been mooted by the recent changes to the

6

prison's policy on religious diets.  Moreover, Kuperman is
collaterally estopped from litigating these claims because of his
prior, unsuccessful attempt to litigate the identical issue in
state court.

Before addressing these procedural issues, it is important
to put Kuperman's First Amendment and RLUIPA claims within their
substantive context.  The First Amendment states, in relevant
part, that "Congress shall make no law ... prohibiting the free
exercise" of religion.  U.S. CONST., amend. I.  In the prison
setting, where inmates' constitutional rights must be balanced
with the need for prison control and administration, the Supreme
Court has adopted a four-part test for analyzing free exercise
challenges:  (1) whether the prison policy is rationally related
to a legitimate government interest; (2) whether the inmate has
alternative means of exercising his religion; (3) whether and how
a religious accommodation would impact guards, other inmates, and
the allocation of prison resources; and (4) whether the prison
has ready alternatives to the policy.  Turner v. Safley, 482 U.S.
78, 89-90 (1987).

RLUIPA provides even more protection than the First
Amendment.  Congress enacted it in 2000 "to accord religious
exercise heightened protection from government-imposed burdens"

in prisons and certain other settings.  <u>Cutter v. Wilkinson</u>, 544

U.S. 709, 714 (2005).  RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined
> to an institution ... even if the burden results from a
> rule of general applicability, unless the government
> demonstrates that imposition of the burden on that
> person (1) is in furtherance of a compelling
> governmental interest; and (2) is the least restrictive
> means of furthering that compelling governmental
> interest.

42 U.S.C. § 2000cc-1(a).  Our court of appeals has interpreted

RLUIPA claims as having four elements.  The prisoner must prove

that (1) his religious exercise has been burdened by the prison

policy and (2) the burden is substantial.  At that point, the

onus shifts to the government to show that the burden (3)

furthers a compelling governmental interest and (4) is the least

restrictive means of achieving that interest.  <u>Spratt v. R.I.

Dep't of Corr.</u>, 482 F.3d 33, 37-38 (1st Cir. 2007).

    With this framework in mind, the court now proceeds to

address the mootness and collateral estoppel issues raised by the

defendants' summary judgment motion.

**A.** *Mootness*

To demonstrate mootness, the defendants must show that there is no longer a "present, live controversy" between the parties. Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (quoting Hall v. Beals, 396 U.S. 45, 48 (1969)).  Where, as here, the case involves only prospective injunctive relief, the mere fact that the defendants may have harmed the plaintiff in the past is not enough to establish a live controversy, absent continuing adverse effects.  Id.  Nor is it "enough for a plaintiff to assert that [he] 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant -- the prospect of harm must have an 'immediacy and reality.'"  Id. (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)).

Here, the prison's changes to PPD 7.17 have removed any real sense of immediacy from Kuperman's First Amendment and RLUIPA claims.  When Kuperman originally filed this suit, the prison had a "zero tolerance" policy:  an inmate's religious diet could be suspended for a single dietary violation, which happened to Kuperman three times.  But the policy has since been substantially revised to eliminate the "zero tolerance" approach. Now, in order for his kosher meal privileges to be suspended again, Kuperman would need to commit four dietary violations

9

within a two-year period.  That is equal to or greater than the
total number of violations he has committed since being
incarcerated in April 2004, a period nearly three times as long.
And at oral argument, the prison confirmed, and Kuperman agreed,
that Kuperman will be starting from a blank slate.

Even in the unlikely event that Kuperman commits four
dietary violations within two years, suspension would be
discretionary, not automatic, based on a recommendation from the
prison chaplain to the warden.  The prison chaplain has stated
that he would not recommend suspension for an inmate with sincere
religious beliefs and that he regards Kuperman as a sincere
believer.  Even if the chaplain's view changes, Kuperman would
need to be given prior notice and an opportunity to defend
himself before any dietary suspension.  This chain of events is
not impossible, but it is not reasonably foreseeable either,
especially not in the near future.  See Anderson v. City of
Boston, 375 F.3d 71, 93 (1st Cir. 2004) (noting that there must
be "a reasonable expectation that the challenged conduct will be
repeated following dismissal of the case" to avoid mootness)
(quotation omitted).

Because the prospect of future harm to Kuperman is remote
and speculative, this court concludes that a live, present
controversy no longer exists and that the prison's changes to PPD

7.17 have been significant enough to moot Kuperman's First
Amendment and RLUIPA claims.  Another judge in this district
recently reached the same conclusion.  See Wolff v. Perkins, 2008
DNH 127 (Barbadoro, J.), aff'd sub nom., Wolff v. Morse, No. 08-
2005 (1st Cir. June 22, 2009).  As in this case, the inmate in
Wolff brought a RLUIPA claim alleging that the prison wrongly
suspended his kosher meal privileges in response to a single
dietary violation under an earlier version of PPD 7.17.  As in
this case, the inmate's claim was limited to prospective
injunctive relief.  Judge Barbadoro concluded that the recent
changes to PPD 7.17 had mooted the claim.  Id.  The court of
appeals agreed, explaining:

> That suspension [of kosher meal privileges] occurred
> under a prison policy that has since been revised.
> Even if the appellant were to break his religious diet
> in the future, he would not be subjected to suspension
> again.  The district court's finding that these facts
> mooted appellant's request for prospective relief is
> correct.

Wolff v. Morse, No. 08-2005 (1st Cir. June 22, 2009)
(unpublished) (citing Steir, 383 F.3d at 16).  The same analysis
applies to Kuperman's claims.

      This is not to say, however, that the prison has resolved
the underlying First Amendment and RLUIPA issues.  PPD 7.17
continues theoretically to allow the prison to suspend an
inmate's religious diet based on a limited number of dietary

violations, even if the inmate has sincere religious beliefs
(notwithstanding the prison's avowed intent to limit suspensions
to inmates whose sincerity it questions).  While neither the
Supreme Court nor the First Circuit has squarely addressed the
issue, there is a long line of cases from other circuits holding
that prisoners have a First Amendment right to a diet consistent
with their sincere religious beliefs.[4]  Indeed, the Supreme Court
has noted that one of the "typical example[s]" of "frivolous or
arbitrary barriers [that] impeded institutionalized persons'
religious exercise" -- as documented by Congress before enacting
RLUIPA -- was a prison's refusal to provide religious diets to
Muslim inmates.  Cutter, 544 U.S. at 716 & n.5 (quotation
omitted).  RLUIPA has now set the bar even higher than the First
Amendment, requiring the application of strict scrutiny to prison
policies that substantially burden an inmate's religious
exercise.  See Spratt, 482 F.3d at 37-38.  Courts have
consistently held that a prison's refusal to provide religious

_____

[4]See, e.g., Ford v. McGinnis, 352 F.3d 582 (2d Cir. 2003);
Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002); Love v.
Reed, 216 F.3d 682 (8th Cir. 2000); Makin v. Colo. Dep't of
Corr., 183 F.3d 1205 (10th Cir. 1999); Johnson v. Horn, 150 F.3d
276 (3d Cir. 1998), overruled on other grounds by DeHart v. Horn,
227 F.3d 47 (3d Cir. 2000); Ashelman v. Wawrzaszek, 111 F.3d 674
(9th Cir. 1997); Whitney v. Brown, 882 F.2d 1068 (6th Cir. 1989);
McElyea v. Babbitt, 833 F.2d 196 (9th Cir. 1987); Kahane v.
Carlson, 527 F.2d 492 (2d Cir. 1975).  The Fifth Circuit is a
notable exception.  See Kahey v. Jones, 836 F.2d 948 (5th Cir.
1988).

diets to sincere believers cannot withstand strict scrutiny under
RLUIPA.[5]

The policy here might be regarded as a substantial burden on
religious exercise and therefore subjected to strict scrutiny
under RLUIPA.  While it is true that the policy imposes no burden
on the hypothetical prisoner who adheres perfectly to his
religious diet, few religious believers -- especially <u>imprisoned</u>
believers -- would lay claim to perfection.  <u>See</u>, <u>e.g.</u>, Saint
Augustine, Bishop of Hippo, <u>Sermon CLXX</u> ("This is the very
perfection of a man, to find out his own imperfections.").  For
imperfect but nonetheless sincere believers who happen to stray
from their religious diets four times over the course of two
years (i.e., once every six months), the policy could impose a
heavy burden indeed, resulting in at least a one-month suspension
of the religious diet and thus forcing the inmate to choose
between his religious scruples and his nutritional needs.  <u>See</u>
<u>Thomas v. Review Bd. of Ind. Employment Sec. Div.</u>, 450 U.S. 707,
718 (1981) (defining a "substantial burden" as one that "put[s]

---

[5]<u>See</u>, <u>e.g.</u>, <u>Nelson v. Miller</u>, 570 F.3d 868 (7th Cir. 2009);
<u>Koger v. Bryan</u>, 523 F.3d 789 (7th Cir. 2008); <u>Shakur v. Schriro</u>,
514 F.3d 878 (9th Cir. 2008); <u>Hudson v. Dennehy</u>, 538 F. Supp. 2d
400 (D. Mass. 2008).  The Fifth Circuit is again the exception.
<u>See</u> <u>Baranowski v. Hart</u>, 486 F.3d 112 (5th Cir. 2007).

substantial pressure on an adherent to modify his behavior and to violate his beliefs").[6]

For the prison's current policy to survive strict scrutiny, the prison would have to show, first, that the burden on religious exercise "furthers a compelling governmental interest," and second, that it "is the least restrictive means of achieving that compelling interest." Spratt, 482 F.3d at 38.  While the prison certainly has a valid interest in weeding out insincere requests for religious diets, there is some question whether that interest is truly compelling.  The evidence presented in this case suggested that providing religious meals would result in "minimal" additional expense per inmate and "no disruption in prison security or order." Kuperman, 2007 DNH 059, 13.  It is possible -- as the defendants stressed at oral argument -- that widespread abuse of religious diets by insincere inmates might change this calculus.  But the defendants have not presented any evidence that this court's preliminary injunction -- which deemed the earlier policy unconstitutional as applied to Kuperman, id.

---

[6]Imagine, for example, a policy that prohibited inmates from attending weekly worship services if they missed four such services over a two-year period.  Such a policy might substantially burden religious exercise.  The policy here involves a different form of religious exercise, but the same burden.  If anything, the burden might be greater, because the religious exercise occurs multiple times a day, not just once a week, which increases the opportunity for deviation.

14

at 14 -- resulted in a outpouring of dubious requests for
religious diets.

Even assuming that modest cost containment constitutes a
compelling state interest, the prison would have to show that PPD
7.17 is the least restrictive means of achieving it.  Suspending
an inmate's religious diet is a rather restrictive measure and
could be viewed as overbroad, potentially affecting sincere and
insincere inmates alike (again, notwithstanding the prison's
avowed intent to limit suspensions to inmates whose sincerity it
questions).  Other alternatives, such as the loss of canteen
privileges or even just a higher threshold for dietary
suspension, are arguably less restrictive and more narrowly
tailored.  See Spratt, 482 F.3d at 41 n.11 (explaining that,
while a prison need not refute every conceivable alternative, it
should explore some alternatives and explain why they were
rejected in order to satisfy RLUIPA scrutiny).

A circuit split is brewing on this very issue.  The Fourth
Circuit Court of Appeals recently held that a prison violated
RLUIPA when it prevented a prisoner from participating in Ramadan
meals and group prayers after catching him breaking his Ramadan
fast.  See Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006).  In an
earlier case, however, the Eighth Circuit Court of Appeals
reached the opposite conclusion, upholding such a policy because

15

"[r]ather than burdening Ramadan worshippers, the ... policy allows full participation in the fast and removes from the procedures only those worshippers who choose to break the fast." Brown-El v. Harris, 26 F.3d 68, 69-70 (8th Cir. 1994).  The Lovelace court distinguished Brown-El because it applied a First Amendment analysis, whereas Lovelace applied the "more rigorous" RLUIPA analysis.  Lovelace, 472 F.3d at 188 n.3.  But a dissenting judge saw no material distinction and argued for the result in Brown-El.  See id. at 208 (Wilkinson, C.J., concurring in the judgment in part and dissenting in part).

In a case even closer to this one, the Seventh Circuit Court of Appeals recently applied the heightened statutory standard[7] and nevertheless concluded that suspension of kosher diet privileges in response to dietary violations is not a substantial burden on religious exercise because it does not "compel conduct contrary to religious beliefs:  [the prisoner] was forced to eat the non-kosher meals only because he turned down the kosher ones."  Daly v. Davis, No. 08-2046, 2009 WL 773880 (7th Cir.

---

[7]Technically, the court applied the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1 et seq., a precursor to RLUIPA that the Supreme Court declared unconstitutional as applied to the states, see City of Boerne v. Flores, 521 U.S. 507 (1997), but that still applies to claims by federal prisoners, such as the plaintiff in Daly.  RFRA and RLUIPA apply similar standards.

2009) (unpublished).  This holding also appears to be in tension with Lovelace.

This court need not pick a side in the debate, because Kuperman's claims are moot and, as explained infra, collaterally estopped.  But suffice it to say that the prison's policy on religious diets remains open to question under the First Amendment and RLUIPA, particularly as applied to inmates with sincere religious beliefs.


**B.  *Collateral estoppel***

Even if Kuperman's First Amendment and RLUIPA claims were not moot, they would be barred under the doctrine of collateral estoppel.  Two years before filing this suit, Kuperman brought a similar suit against the prison in state court alleging "that he has been wrongfully denied continuation of kosher meal privileges" under PPD 7.17.  Kuperman, No. 04-E-119, at 1.  The state court dismissed his claim on the merits, holding that PPD 7.17 "provides an opportunity for the petitioner to exercise his constitutionally guaranteed rights of religious belief."  Id. at 4.

A state court judgment "is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."  Giragosian v. Ryan, 547 F.3d 59, 63 (1st

Cir. 2008) (citing 28 U.S.C. § 1738) (quotation omitted).  Under
New Hampshire law, collateral estoppel has three elements:  that
(1) the two cases involve identical issues or facts; (2) the
first action resolved them finally on the merits; and (3) the
party facing estoppel appeared in the first action and had a full
and fair opportunity to litigate.  See Cook v. Sullivan, 149 N.H.
774, 778-779 (2003); Day v. N.H. Ret. Sys., 138 N.H. 120, 122
(1993).

All three conditions have been met here.  Kuperman had a
full and fair opportunity in state court to litigate whether PPD
7.17 burdened his religious exercise by allowing the prison to
suspend his kosher meal privileges based on a single departure
from his kosher diet.[8]  The court resolved that issue on the
merits, concluding that PPD 7.17 did not burden his religious
exercise.  This case involves the identical issue.  Without
showing such a burden, Kuperman cannot prevail on his First
Amendment claim or his RLUIPA claim.  He is therefore

---

[8]Kuperman pled his state court claim very generally, without
clarifying whether he brought it under the First Amendment,
RLUIPA, or both.  The state court's order focused on the
constitutional standard under Turner, 482 U.S. at 78.  RLUIPA,
though, also requires an inmate to show, as an essential element
of his claim, a substantial burden on his religious exercise.
Spratt, 482 F.3d at 37-38.  Because the state court found no such
burden, its order also has an estoppel effect on Kuperman's
RLUIPA claim.

collaterally estopped from relitigating the issue under New
Hampshire law.

Kuperman argues that collateral estoppel should not apply
because the prison's policy on religious diets changed between
the time of his two lawsuits, as did the facility where he was
being incarcerated.  But the more significant changes to the
policy -- i.e., the ones that have mooted his claims -- actually
occurred well <u>after</u> he filed this suit.  Between the two suits,
the prison made only one notable change to the policy:  dietary
suspensions went from being automatic for every violation to
being limited to intentional violations.  That change made the
policy more lenient to inmates and thus would not have materially
altered the state court's decision upholding the policy as
applied to Kuperman.  As to the change in facilities, both of
them are part of the same system and applied the same policy in
the same manner, making the transfer also immaterial to the
analysis.[9]

_____

[9]At oral argument, Kuperman's counsel suggested that the
facilities engaged in different levels of investigation before
finding a dietary violation.  The summary judgment record
contains no support for this new assertion.  But even if it did,
the scope of investigation is immaterial to Kuperman's claims as
pled in the complaint, <u>see</u> document no. 1, and as reformulated by
Judge Muirhead without objection from Kuperman, <u>see</u> document no.
6.  Kuperman is alleging that the prison policy violates the
First Amendment and RLUIPA regardless of whether he received due
process or even committed a dietary violation.

While the court of appeals has "acknowledge[d] that changed circumstances may defeat collateral estoppel, collateral estoppel remains appropriate where the changed circumstances are not material." Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007); see also In re Zachary G., No. 2008-785, 2009 WL 2342913, *3 (N.H. July 31, 2009) (citing Sheehy v. Sheehy, 88 N.H. 223, 226 (1936)). "[A] plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff." Ramallo Bros. Printing, 490 F.3d at 91. That is exactly what Kuperman attempted here:  to challenge substantially the same prison policy and conduct in a different forum, only two years later. This court cannot -- and will not -- substitute its judgment for that of the state court on the identical issue.  Even if Kuperman's First Amendment and RLUIPA claims were not moot, they would be barred by collateral estoppel.

IV.   **Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment[10] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    November 20, 2009

cc:  Nancy Sue Tierney, Esq.
     Danielle Leah Pacik, Esq.

---

[10]Document no. 60.

21